IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **BONNIE KIRBY** and **ADRIAN KIRBY,** | § |
| | § |
| Plaintiffs, | § |
| | § |
| v. | § Civil Action No. **3:15-CV-2543-L** |
| | § |
| **SMITH & NEPHEW, INC., et al.,** | § |
| | § |
| Defendants. | § |

## MEMORANDUM OPINION AND ORDER

Before the court are Plaintiffs' Motion to Remand, filed August 28, 2015 (Doc. 7) and Plaintiffs' Supplemental Motion to Remand, filed September 28, 2016 (Doc. 17). After carefully considering the motions, briefing, record, and applicable law, the court **grants** Plaintiffs' Motion to Remand and **denies as moot** Plaintiffs' Supplemental Motion to Remand.

**I.    Background**

This action arises from injuries allegedly suffered by Plaintiff Bonnie Kirby following two hip replacement surgeries using component parts manufactured by Defendant Smith & Nephew, Inc. ("Smith & Nephew"), a Delaware corporation with its principal place of business in Tennessee. Plaintiffs Bonnie Kirby and her husband Adrian Kirby ("Plaintiffs"), who are Texas citizens, filed Plaintiffs' Original Petition ("Petition") on June 24, 2015, in the 14th Judicial District Court, Dallas County, Texas (later transferred to the 192nd Judicial District), against Smith & Nephew, a medical device manufacturing company that was engaged in the making and selling of instruments and devices for use in operating rooms throughout the world. Plaintiffs also sued a Smith & Nephew sales representative, Brian Childress, a Texas citizen, and Neylu, Inc., alleged to be a "Texas

company" and a "sham corporation" established by Childress to solicit sales on behalf of Smith & Nephew (collectively, "Childress").

Regarding citizenship, Defendants assert that "[o]n information and belief, Plaintiffs are citizens of Texas for purposes of this Court's diversity jurisdiction[.]" Defs.' Notice of Removal ¶ 22. In Plaintiffs' Motion to Remand, they concede that "Bonnie Kirby and Adrian Kirby are citizens of the State of Texas." Pls.' Mot. to Remand ¶ 2. With regard to the citizenship of Brian Childress and Neylu, Inc., Defendants assert that "the Petition alleges that Plaintiffs are . . . residents of Texas." Defs.' Notice of Removal ¶ 25. In their Motion to Remand, Plaintiffs concede that Neylu, Inc. and Brian Childress "are citizens of the State of Texas." Pls' Mot. to Remand ¶ 3. The court concludes that the citizenship allegations in Defendants' Notice of Removal, when coupled with concessions in Plaintiffs' Motion to Remand, are sufficient to establish that, for purposes of 28 U.S.C. § 1332, Plaintiffs Bonnie and Adrian Kirby are citizens of Texas, and Defendants Neylu, Inc. and Brian Childress are citizens of Texas.

Plaintiffs also originally sued two other Smith & Nephew salesmen, Chris Baker and James Thompson, as well as their respective corporate entities, CPB Enterprises and J. Sophus Enterprises, Inc. On July 6, 2016, the parties filed a Stipulation of Dismissal (Doc. 12), dismissing with prejudice all claims against these defendants.

In Plaintiffs' Petition, Plaintiffs allege that Bonnie Kirby was injured and suffered severe complications after receiving defective metal-on-metal hip implants in both hips, the components of which were manufactured by Smith & Nephew. Plaintiffs allege that Dr. Richard D. Schubert surgically implanted into Bonnie Kirby metal-on-metal hip implants during two total hip arthroplasties on June 1, 2009 (left hip), and December 7, 2009 (right hip). Pls.' Orig. Pet. ¶ 17.

Plaintiffs allege that the implants used in both surgeries consisted of at least seven separate device components that Smith & Nephew designed, manufactured, marketed, distributed, promoted, modified, packaged, and sold. *Id.* Plaintiffs allege that these seven components came from at least three different Smith & Nephew hip implant systems (the "device components"). *Id.*

According to Plaintiffs, on June 1, 2009, when Bonnie Kirby had her left hip replaced, she received the following Smith & Nephew components: (1) a R3 acetabular shell (ref # 71335552); (2) a R3 cobalt-chromium acetabular liner (ref #71341152); (3) a modular head sleeve (ref # 7422100); (4) a hemi head (ref #74122540); (5) a Synergy porous plus femoral stem component (ref # 71309014); and spherical head screws. *Id.* ¶ 18. On December 7, 2009, when Bonnie Kirby had her right hip replaced, she received the following Smith & Nephew components: (1) a R3 acetabular shell (ref # 71335550); (2) a R3 cobalt-chromium acetabular liner (ref #71341150); (3) a modular sleeve (ref # 7422100); (4) a hemi head (ref #74122538); (5) a Synergy porous plus femoral stem component (ref # 71309014); and spherical head screws. *Id.* ¶ 19. Plaintiffs allege that Bonnie Kirby began experiencing problems and pain in the area of the hip implants and, on September 1, 2011, had to have her right hip surgically revised. *Id.* ¶ 21. The preoperative and postoperative diagnoses were "Mechanical failure of right total hip arthroplasty." *Id.* Plaintiffs allege that some of the Smith & Nephew parts implanted into Bonnie Kirby had failed to perform as intended and were a proximate or producing cause of her injuries and revision surgery. Plaintiffs allege that the problems associated with both sets of implants continue to be experienced by Bonnie Kirby on both sides as a result of this defective and unreasonably dangerous combination of Smith & Nephew parts. *Id.*

Plaintiffs further allege that to circumvent rigorous medical device regulations and conditions for approval imposed by the Food and Drug Administration ("FDA") on Smith & Nephew's medical device called the Birmingham Hip Resurfacing ("BHR") System, which was used during Bonnie Kirby's hip implant, Smith & Nephew employed a commission-based sales force, including sales representative Childress, to engage in conduct that Smith & Nephew could not, including promoting illegal uses and design changes of Smith & Nephew products, such as modifications to the BHR system without FDA approval and the unapproved mix of device components used in Bonnie Kirby's two surgeries. *Id.* ¶ 32. Plaintiffs allege that pursuant to a representative sales agreement, Childress "actively distributed or otherwise placed the implant device components into the stream of commerce." *Id.* ¶ 43. Plaintiffs allege that Childress, pursuant to an agreement with Smith & Nephew, at times, observed, commented on, and assisted with device implantation surgery. According to Plaintiffs, Childress:

> provided the Plaintiff's surgeon with information about the availability of the illegal combination of devices used on Plaintiff, and they also helped Smith & Nephew hide the true dangers of this combination by failing to report problems and injuries associated with its use. [Childress was] responsible for independently verifying that the correct goods got from the operating room and documenting everything on Smith & Nephew corporate forms, leaving no doubt about the exact combination of parts used in each surgery. [Childress] thus played a key role in the provision of information and the provision of this unapproved combination of device components to Plaintiff's physician.

*Id.* ¶ 41. Plaintiffs further allege that Childress was:

> Smith & Nephews local distributor[] and physician contact point[.] This included the provision of information to Plaintiff's surgeon, including by not limited to product information, warnings, surgical techniques, package inserts, demonstrations on product implantation, and the proper combinations of Smith & Nephew devices for implantation. [Childress's] role as Smith & Nephew's contact with physicians gave [him] substantial control over the warnings, instructions, and product information accompanying the implants, and [he] made express representations about the

>    implants and their use and their adverse event history that were false, incomplete and misleading.

*Id.* ¶ 44. Additionally, Plaintiffs allege that Smith & Nephew used Childress "to provide, distribute, and deliver the unapproved combination of parts to Dr. Schubert despite agreements it made with the FDA when seeking product approval." *Id.* ¶ 45. Plaintiffs allege that Childress "broke those promises by modifying the device design and removing product labels and product information." *Id.* ¶ 46. More specifically, Plaintiffs allege that Childress

>    changed the design of the Birmingham Hip Resurfacing System by removing the metal liner and other parts from that approved system and then distributing them for profit in an unapproved, illegal combination along with other Smith & Nephew component parts . . . The device design modification was knowingly made for a commercial purpose, and the modifications proximately caused the mechanical failure of the product, subjecting [Childress] to strict products liability for altering or modifying the product under Texas Civil Practice and Remedies Code § 82.003(a)(2).

*Id.* ¶ 62.

Plaintiffs assert four causes of action against Childress: (1) negligence; (2) strict products liability (marketing defect); (3) strict products liability (design defect); and (4) conspiracy. As to Smith & Nephew, Plaintiffs bring causes of action for: (1) negligence; (2) strict products liability (marketing defect and design defect); (3) breach of express warranty; (4) breach of implied warranty of merchantability; (5) fraudulent concealment; (6) intentional or negligent misrepresentation; and (7) conspiracy.

Defendant Smith & Nephew, with the consent of the other Defendants, removed the action to this court on July 31, 2015, based on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). *See* Defs.' Notice of Removal ¶ 16. In the Notice of Removal, Smith & Nephew argue that Childress was improperly joined, and that, therefore, his Texas citizenship should be disregarded for purposes

of diversity jurisdiction. *See id.* ¶ 49. Plaintiffs moved to remand the case on August 28, 2015, arguing that Childress was properly joined as a Defendant, and thus, there is no complete diversity of citizenship, requiring remand to state court. The motion has been fully briefed and is ripe for adjudication.

## II. Applicable Legal Standards

### A. Removal Jurisdiction

Federal courts are courts of limited jurisdiction and possess only that power authorized by the United States Constitution or by statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Unless Congress expressly provides otherwise, a defendant may remove a state court civil action to a federal district court if the district court has original jurisdiction over the action. 28 U.S.C. § 1441(a). A federal court has original jurisdiction over civil actions in which there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). The statute requires complete diversity of citizenship; that is, a district court cannot exercise subject matter jurisdiction if any plaintiff shares the same citizenship as any defendant. *See Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)). In considering citizenship, however, the court considers only the citizenship of real and substantial parties to the litigation; it does not take into account nominal or formal parties that have no real interest in the litigation. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980). The citizenship of a party that is improperly joined must be disregarded in determining whether diversity of citizenship exists. *Johnson v. Heublein*, 227 F.3d 236, 240 (5th Cir. 2000).

### B. Improper Joinder

A party seeking to remove an action to federal court on the basis of fraudulent or improper joinder bears a heavy burden. *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (en banc). In *Smallwood*, the court "adopt[ed] the term 'improper joinder' as being more consistent with the statutory language than the term 'fraudulent joinder,' which has been used in the past. Although there is no substantive difference between the two terms, 'improper joinder' is preferred." *Id*. at 571 n.1. Accordingly, the court uses the term "improper joinder" in this opinion. As the party wishing to invoke federal jurisdiction by alleging improper joinder, Defendants have the burden to establish that the Texas Defendants were joined by Plaintiffs to defeat federal jurisdiction. *Id*. at 575. The court is to resolve "any doubt as to the propriety of removal" in favor of remand. *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (citation and quotation marks omitted).

To establish improper joinder, Defendants must prove: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999)). Since Defendants do not assert fraud on the part of Plaintiffs. the test for improper joinder is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573 (citing *Travis*, 326 F.3d at 648).

In addressing this issue, the district court must determine whether a plaintiff has "any possibility of recovery against the party whose joinder is questioned." *Travis*, 326 F.3d at 648 (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)). "If there is arguably a reasonable basis for predicting that state law might impose liability on the facts involved, then there is no [improper] joinder." *Great Plains Trust*, 313 F.3d at 312 (internal quotations and citations omitted). "This possibility, however, must be reasonable, not merely theoretical." *Id*. If there is a reasonable possibility that a plaintiff can recover on any of his or her claims, there is no improper joinder, and the case must be remanded. *Smallwood*, 385 F.3d at 575. In making this determination regarding improper joinder, a court does not "decide whether the plaintiff will actually or even probably prevail on the merits, but look[s] only for a [reasonable] possibility that [the plaintiff] may do so." *Dodson v. Spiliada Mar. Corp.*, 951 F.2d 40, 42 (5th Cir. 1992) (citations omitted). To determine whether a party was improperly joined, the court "must evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff." *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005) (quoting *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981)). On the other hand, if there is no reasonable possibility for predicting liability against the nondiverse defendant, improper joinder exists, and the action remains in federal court.

In deciding the question of improper joinder, the court may either (1) "conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether [it] states a claim under state law against the in-state defendant"; or (2) in limited circumstances, conduct a summary inquiry "to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573-74. "When a

defendant seeks to remove a case, the question of whether jurisdiction exists is resolved by looking at the complaint at the time the [notice of] removal is filed." *Brown v. Southwestern Bell Tel. Co.*, 901 F.2d 1250, 1254 (5th Cir. 1990). A court may not look to postremoval filings or pleadings to determine the issue of improper joinder. *Griggs v. State Farm Lloyds*, 181 F.3d at 700 (citation omitted). Limiting the determination of questions regarding removal jurisdiction to the claims set forth in the state pleadings at the time of removal ensures finality and early resolution of the jurisdictional issue, both of which reduce expense and delay to the parties and court. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995).

      **C.**      **The Applicable Pleading Standard**

In *International Energy Ventures Management, L.L.C. v. United Energy Group, Limited*, the Fifth Circuit addressed whether state or federal pleadings standards apply to the issue of improper joinder, holding that a federal court must apply the federal pleading standard. 818 F.3d 193, 208 (5th Cir. 2016). The federal pleading standard is that used for addressing a motion under Federal Rule of Civil Procedure 12(b)(6).

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a

complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011)

**Memorandum Opinion and Order - Page 10**

(quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc).

**III.   Analysis**

Plaintiffs' Petition alleges numerous causes of action against Childress, including claims for violations of chapter 82 of the Texas Civil Practice and Remedies Code (the "Product Liability Act"). Because Texas law recognizes that a sales representative can, under certain circumstances, potentially be liable for strict products liability violations, the sole issue before this court is whether or not Plaintiffs have stated a viable claim against the Childress. *See generally Escalante v. Deere*

**Memorandum Opinion and Order - Page 11**

*& Co.*, 3 F. Supp. 3d 587, 589 (S.D. Tex. 2014) (citing Texas law under which seller may be liable under Product Liability Act). If so, Childress was properly joined, and this court must grant Plaintiffs' Motion to Remand for lack of diversity jurisdiction. If the court finds a reasonable basis to predict that Plaintiffs can potentially recover on one of the causes of action asserted against Childress, the court must remand the entire case. *Smith-Manning v. State Farm Lloyds*, 2013 WL 5637539, at *2 (N.D. Tex. Oct. 14, 2013) (Lynn, J.) (quoting *Gray ex rel. Rudd v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 412 (5th Cir. 2004)).

A.   **The Childress Declaration and Deposition Excerpts**

In opposition to Plaintiffs' Motion to Remand, Smith & Nephew refers the court to Childress's declaration and deposition excerpts, filed in connection with Defendants' Notice of Removal. *See* Defs.' Notice of Removal, Exs. 14 & 16. As already stated, in deciding the question of improper joinder, the court may either (1) "conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether [it] states a claim under state law against the in-state defendant"; or (2) *in limited circumstances*, conduct a summary inquiry "to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573-74 (emphasis added). Childress's declaration and deposition excerpts contain non-specific denials of involvement in the design, manufacture, and marketing of the implant devices, and fail to "identify the presence of discrete and undisputed facts" that would preclude Plaintiffs' recovery against Childress. *Smallwood*, 385 F.3d at 573-74.[1] In

---

[1] The court agrees with a recent decision by another court in this judicial district granting a motion to remand in a nearly identical lawsuit brought against Smith & Nephew and Childress by another recipient of allegedly defective hip replacement component parts. *See Hutchens v. Smith & Nephew, Inc., et al.*, No. 3:13-CV-4979-B (N.D. Tex. Aug. 22, 2014) (Boyle, J.) (Doc. 7-1). In that case, confronted with a similar declaration by Brian Childress, in evaluating the motion to remand, the court declined to consider Childress's

**Memorandum Opinion and Order - Page 12**

short, the Childress Declaration and deposition excerpts are inadequate to trigger a summary-type analysis, and are insufficient to rebut the specific allegations against Childress in Plaintiffs' Petition. The court, therefore, concludes that the proper method for deciding the question of whether Childress was improperly joined is to conduct a Rule 12(b)(6)-type analysis, focusing solely on Plaintiffs' pleadings.

### B.     Whether Plaintiffs State a Viable Claim Against Childress

In ruling on the subject motion, this court only asks whether, applying the federal pleading standard, there is a reasonable basis to predict that Plaintiffs state a viable claim and might be able to recover under state law against Childress. *See Smallwood*, 385 F.3d at 573. For the reasons that follow, the court concludes that Plaintiffs have stated a plausible claim for relief for violations of the Texas Product Liability Act against Childress. *See Twombly*, 550 U.S. at 556.

Under chapter 82 of the Texas Civil Practice and Remedies Code, a "products liability action" is defined as:

> any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories.

Tex. Civ. Prac. & Rem. Code § 82.001. Section 82.003 of the Texas Civil Practice and Remedies Code "provides blanket protection for nonmanufacturing sellers of products from liability for injuries

---

declaration, submitted with Defendant Smith & Nephew's notice of removal, finding that it was "at best, a series of non-specific denials of involvement in the design, manufacture, and marketing of the implant devices[.]" *Hutchens*, No. 3:13-CV-4979-B, slip op. 6 (Doc. 7-1). Quoting the Fifth Circuit's decision in *Smallwood*, the district judge stated that the Childress declaration "wholly fails to 'identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery' against him." *Id.* (quoting *Smallwood*, 385 F.3d at 573-74). As such, the district judge concluded that "the appropriate method of testing the sufficiency of Plaintiffs' pleadings is through a Rule 12(b)(6)-type analysis." *Id.* This court agrees and similarly finds this is not a case in which the court need look beyond the pleadings.

**Memorandum Opinion and Order - Page 13**

caused by a product *unless one of the specified exceptions apply*." *Gill v. Michelin N. Am., Inc.*, 3 F. Supp. 3d 579, 584 (W.D. Tex. 2013) (original emphasis) (citation omitted). In this case, Plaintiffs allege that Childress is a nonmanufacturing seller and that he is liable under § 82.0003(a)(2) of the Texas Civil Practice and Remedies Code, one of the exceptions to the "blanket protection" afforded nonmanufacturing sellers discussed directly above.[2]

Section 82.003(a)(2) provides that a seller may be liable where the "seller altered or modified the product and the claimant's harm resulted from that alteration or modification." Tex. Civ. Prac. & Rem. Code § 82.003(a)(2). As summarized above and as set forth in Plaintiffs' Petition, Plaintiffs provide detailed factual allegations that Childres changed the design of the BHR system by removing the metal liner and other parts from the approved system and then distributing them for profit in an unapproved, illegal combination along with other Smith & Nephew component parts. Pls.' Orig Pet. ¶ 62. Plaintiffs further make specific allegations that Bonnie Kirby suffered harm as a result of Childress's actions.

Based on the allegations in Plaintiffs' Petition, the court concludes that Plaintiffs have alleged a plausible claim for recovery against Childress under the Texas Product Liability Act. Since there is a reasonable basis to predict that Bonnie Kirby could recover against Childress under this

---

[2] The court rejects Defendants' argument in their Notice of Removal that Childress is not a "seller" under Chapter 82 of the Texas Civil Practice and Remedies Code, because he "never took title to or ownership interest in the components." *See* Defs.' Notice of Removal ¶ 31. A "seller" is "a person who is engaging in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component thereof." Tex. Civ. Prac. & Rem. Code § 82.001(3). As Plaintiffs correctly note in their Motion to Remand, this definition does not require title to, or ownership interest in, the products, but only that a defendant "distribute or place" the product in the stream of commerce, which Plaintiffs have sufficiently alleged. Pls.' Mot. to Remand 5.

**Memorandum Opinion and Order - Page 14**

statute, the court finds that Plaintiffs' Petition is sufficient under the federal pleading standard to state a plausible claim against Childress under Texas law. *See Iqbal*, 556 U.S. 662 at 678.[3]

### IV.  Conclusion

Because Childress was not improperly joined, his citizenship destroys diversity jurisdiction and, therefore, the court must remand this action. *See* 28 U.S.C. § 1447(c). For the reasons herein stated, the **grants** Plaintiffs' Motion to Remand (Doc. 7) and **denies as moot** Plaintiffs' Supplemental Motion to Remand (Doc. 17). Pursuant to 28 U.S.C. § 1447(c), the court **remands** this action to the 192nd Judicial District Court, Dallas County, Texas, from which it was removed. The clerk of the court is **directed** to effect the remand in accordance with the usual procedure.

**It is so ordered** this 17th day of February, 2017.

Sam A. Lindsay
United States District Judge

---

[3] Defendants argue that the claims against Childress are preempted because Childress could not give warnings other than those approved by the FDA. Defs.' Notice of Removal 16. As the court has not had need to consider the viability of Plaintiffs' claims that Childress changed the warnings or construed them in a misleading way, this argument need not be addressed.

**Memorandum Opinion and Order - Page 15**